

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MWG:DJM
F. #2023R00875

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 7, 2025

By ECF

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Demetrius Fryars
     Criminal Docket No. 24-98 (S-1) (RPK)

Dear Judge Kovner:

  The government respectfully submits this letter in advance of the sentencing hearing scheduled for Monday, July 14, 2025, at 4:30 p.m. On March 24, 2025, the defendant Demetrius Fryars pleaded guilty to Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a), Count Three of the above-captioned superseding indictment. For the reasons discussed below, the government respectfully requests that the Court impose a sentence of 70 months' imprisonment, which is within the applicable United States Sentencing Guidelines ("U.S.S.G" or "Guidelines") range of 63 to 78 months' imprisonment.

I. Background

  A. The Robbery Conspiracy

  In December 2023 and January 2024, the defendant participated in a conspiracy to commit armed robberies in Brooklyn and Queens, New York. This conduct was part of a larger conspiracy involving other co-defendants—Tyjuan Adams, Malik Bright, Charles Deshields, and Damon Townsend. Presentence Investigation Report ("PSR") ¶¶ 7-17. While the specific permutations of those involved in the robberies changed, as shown through security video footage obtained from each of the stores, the pattern was largely consistent: three or four robbers entered a smoke shop or deli, held the store employees at gunpoint, and proceeded to ransack the store in search of cash and store merchandise. Many of these stores were located on busy streets filled with small businesses and residential homes nearby. The defendant personally participated in one armed robbery in December 2023 and two armed robberies in January 2024.

1.      December 4, 2023 Robbery

On December 4, 2023, at approximately 9:47 p.m., Deshields and Bright, both wearing masks, entered a smoke shop on Myrtle Avenue in Queens, New York.  Soon after entering the smoke shop, Bright pointed a silver firearm directly at the store employee while Deshields jumped over the display counter.  While pointing the firearm at the cashier, Bright said, in sum and substance, "Take all the cash out of the register or I'll shoot you."  Deshields then removed money from the cash register and placed it into a grey duffle bag.  PSR ¶ 8.

At approximately 9:48 p.m., the defendant and Adams entered the smoke shop.  Adams jumped over the display counter, went into the back room of the smoke shop with Deshields, and began removing items from the shelves.  Adams then began removing additional items from the display counter and placing them into a black trash bag.  PSR ¶ 9.  As seen on video surveillance footage, the defendant was wearing a mask and a green hooded sweatshirt.  During the robbery, the defendant remained next to Bright, who was pointing the firearm at a victim in the corner of the store.  The defendant continued standing in front of the counter and pointed to specific items in the display cases, which defendants Adams and Deshields then grabbed.

 

In total, the defendant and his co-conspirators stole approximately $12,000 in cash and cannabidiol ("CBD") products, and then fled.  PSR ¶ 9.[1]

---

[1] The PSR states that the defendant and his co-conspirators stole approximately $2,000 in cash and approximately $400 worth of CBD products during this robbery.  PSR ¶ 9.  On June 5, 2025, the government submitted an objection to the PSR prepared for the defendant (the "Government's PSR Objections").  In its letter, the government noted that law enforcement agents spoke with a representative from the robbery location in or about October 2024, who stated that the total financial loss of products and cash was approximately $12,000.  See Government's PSR Objections at 1.

2.  January 20, 2024 Robbery

On January 20, 2024, at approximately 4:32 p.m., the defendant, Adams, Bright, and Townsend entered a commercial establishment located on 86th Street in Brooklyn, New York.  Soon after entering the store, Bright pointed a silver firearm at a store employee working behind the display counter and stated, in sum and substance, "This is a robbery open the register."  Townsend then went behind the display counter and threw items into a bag while the store employee emptied the cash register for Adams.  PSR ¶ 13.  As seen on video surveillance footage, the defendant was wearing a mask and a black hooded sweatshirt.  During the robbery, the defendant stood near Bright and paced around the store, including near the entrance of the store, with his hands in his pockets.  The other defendants proceeded to steal the store merchandise.




In total, the defendant and his-conspirators stole approximately $350 in cash, an iPhone from a store employee, and approximately $2,000 worth of store merchandise, and then fled.  PSR ¶ 13.

3.  January 25, 2024 Robbery

On January 25, 2024, at approximately 1:10 a.m., the defendant, Adams, Bright, and Townsend entered a store located on Broadway in Queens, New York.  Bright brandished a silver firearm and pointed the firearm at three victims in the store.  PSR ¶ 14.  As seen on video surveillance footage, the defendant was wearing a mask and a green hooded sweatshirt.  During the robbery, the defendant held a trash bag and proceeded to help his co-defendants rob the store of merchandise, including by actively placing items in the trash bag.  The defendant—along with his co-defendants who were also stealing store merchandise—were standing next to the victims who each had their hands up in the air.  At approximately 1:16 a.m., the defendant gestured at one of the victims and pointed at a specific piece of merchandise in the store, which the victim then retrieved and handed to one of the defendant's co-conspirators.

3



In total, the defendant and his co-conspirators stole four iPhones, worth $3,700, from the victims, as well as $13,620 worth of merchandise, such as tobacco products, and then fled. PSR ¶ 14.

Immediately following the January 25, 2024 robbery, New York City Police Department ("NYPD") officers used location tracking services to track one of the victim's iPhones stolen from the robbery. The location of the stolen iPhone was tracked to an apartment building on Belmont Avenue in Brooklyn, New York. NYPD officers ultimately apprehended Townsend on the second floor of the apartment building, where he was found standing next to a black garbage bag with various tobacco products. PSR ¶ 15. A victim from the robbery on Broadway in Queens, New York subsequently identified these items as the same items stolen from the store.

Although Townsend was arrested after this robbery, the defendant's co-conspirators Adams and Bright committed two additional armed robberies on February 2 and February 9, 2024, in furtherance of the robbery conspiracy. PSR ¶¶ 16-17.

B.  Procedural History

On March 8, 2024, a grand jury sitting in the Eastern District of New York returned an eight-count indictment against Adams, Deshields, and Townsend for their involvement in the robberies. See ECF No. 1. A superseding indictment was returned by the grand jury on August 6, 2024, which added the defendant and Bright as additional defendants, as well as the two additional robberies committed by the defendant's co-conspirators in February 2024. See ECF No. 34. The defendant was charged with one count of Hobbs Act robbery conspiracy (Count One) and three counts of Hobbs Act robbery (Counts Three, Seven, and Eight), all in violation of 18 U.S.C. § 1951(a).

Law enforcement agents arrested the defendant on August 9, 2024. PSR ¶ 19. During post-arrest statements, the defendant admitted to engaging in at least two robberies, but denied knowledge of a firearm being present during the robberies. When asked why he

4

participated in the robberies, he stated, in sum and substance, that he "just did it to do it," and he received marijuana from the robberies.

On March 24, 2025, the defendant pleaded guilty, pursuant to a plea agreement, to Count Three of the superseding indictment related to the above-described Hobbs Act robbery on December 4, 2023. PSR ¶ 1. Per the plea agreement, the defendant also stipulated and admitted to his participation in the additional robberies on January 20, 2024 (Count Seven) and January 25, 2024 (Count Eight). Id. ¶¶ 2-3.

    C.    The Defendant's Criminal History

On October 3, 2011, the defendant and a co-defendant robbed a victim of a cellphone in New York, New York. The stolen cellphone was recovered from the co-defendant's backpack. The defendant was arrested and charged with robbery in the second degree: aided by another. On the same day, the defendant was arrested for a robbery that occurred on September 28, 2011, during which the defendant, aided by another person, punched a victim, causing physical injury, and took the victim's cellphone. On June 27, 2013, he was sentenced to five years' probation. PSR ¶¶ 82, 87-88.

II.    The Sentencing Guidelines

The government agrees with the Probation Department that the defendant's Criminal History Category is I but disagrees with the Total Offense Level calculation. The government's calculation is as follows:

Count Three – Hobbs Act Robbery on December 4, 2023

| | | |
|---|---|---:|
| | Base Offense Level (U.S.S.G. § 2B3.1) | 20 |
| Plus: | Firearm Brandished or Possessed (U.S.S.G. § 2B3.1(b)(2)(C)) | +5 |
| Plus: | Controlled Substance was Taken (U.S.S.G. § 2B3.1(b)(6)) | +1 |
| | Total: | 26 |

Hobbs Act Robbery on January 20, 2024 (Stipulated Conduct)

| | | |
|---|---|---:|
| | Base Offense Level (U.S.S.G. § 2B3.1) | 20 |
| Plus: | Firearm Brandished or Possessed (U.S.S.G. § 2B3.1(b)(2)(C)) | +5 |
| | Total: | 25 |

Hobbs Act Robbery on January 25, 2024 (Stipulated Conduct)

| | | |
|---|---|---:|
| | Base Offense Level (U.S.S.G. § 2B3.1) | 20 |
| Plus: | Firearm Brandished or Possessed (U.S.S.G. § 2B3.1(b)(2)(C)) | +5 |

|  | Total: |  | 25 |

Multiple Count Analysis (U.S.S.G. §§ 3D1.1 to 3D1.5)

Highest Adjusted Offense Level: 26

|  | Level | Units |
|---|---|---|
| Count Three | 26 | 1 |
| Count Seven | 25 | 1 |
| Count Eight | 25 | 1 |
| Total |  | 3 |

| Plus: | 3 Levels (U.S.S.G. § 3D1.4) | +3 |
| Less: | Acceptance of Responsibility (U.S.S.G. §§ 3E1.1(a)-(b)) | -3 |
| Total Offense Level |  | 26 |

PSR ¶¶ 54-80. Because the defendant is in Criminal History Category I, the government calculates the applicable Guidelines range to be 63 to 78 months' imprisonment.[2]

As set forth in the Government's PSR Objections, the PSR states that the defendant meets the criteria under U.S.S.G. §§ 4C1.1(a)(1)-(11). PSR ¶ 79. Therefore, the defendant is a Zero-Point Offender, and his offense level is reduced by two levels. U.S.S.G. §§ 4C1.1(a) and (b). The government respectfully disagrees with Probation's analysis because the defendant used "credible threats of violence in connection with the offense," which makes him ineligible for the two-level reduction under U.S.S.G. § 4C1.1(a)(3).

While he did not personally use violence, the defendant did employ "credible threats of violence in connection with the offense[s]." U.S.S.G. § 4C1.1(a)(3). Indeed, "[a] credible threat need not be explicit." United States v. Celso, No. 22-CR-194-3(EK), 2024 WL 2319679, at *3 (E.D.N.Y. May 22, 2024). Rather, a "sentencing court may 'infer[ ] a threat' from the defendant's conduct and the surrounding circumstances." Id. (quoting United States v. Kirk Tang Yuk, 885 F.3d 57, 83 (2d Cir. 2018)).

---

[2] Pursuant to paragraph 21 of the plea agreement with the government, if the defendant and certain co-defendants pleaded guilty on or before March 28, 2025, the government agreed to move for an additional two-level departure for a global disposition pursuant to U.S.S.G. § 5K2.0, resulting in an adjusted offense level of 24. The government agreed to extend the March 28, 2025 deadline to provide additional time for the defendant's co-defendants to plead guilty. However, as of the date of this submission, co-defendant Malik Bright has not pleaded guilty.

Here, in each of the three robberies, the defendant was standing near Bright—who was pointing a firearm at the victims in the stores—and appeared to be providing muscle for the robberies. Indeed, the defendant is larger than his co-defendants and has an imposing presence, which the defendant himself acknowledged in his sentencing memorandum. See ECF No. 124 ("Defendant's Sentencing Memorandum") at 3 ("Mr. Fryars is a physically imposing individual; that is why his friends wanted him there."). He wore a mask and hooded sweatshirt during each of the robberies, which contributed to his intimidating demeanor. While the defendant may not have been as explicit as Bright in threatening violence, a reasonable victim would have felt threatened by him standing in front of the display counter during the December 3, 2023 robbery and near the store door during the January 20, 2024 robbery, wearing a mask, while his co-defendants robbed the stores. And during the January 25, 2024 robbery, the defendant actively stole merchandise and pointed at a specific item of merchandise that he wanted from the victim.

When viewing these facts together, the defendant cannot carry his burden of showing that he did not credibly threaten violence through his conduct and the surrounding circumstances of the robberies.[3] See, e.g., Celso, 2024 WL 2319679, at *3 (denying two-level reduction under the Zero-Point Offender provision because video evidence showed the defendant and three other men surrounding a victim from whom they sought to collect money, which the court found carried an "implied threat of potential violence"). Therefore, the defendant should not be considered a Zero-Point Offender, and his offense level should not be reduced by two levels.

III.   Applicable Law

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 125 S. Ct. 738, 764-65 (2005). However, the Supreme Court held in Booker that the sentencing court must consider the Guidelines in formulating an appropriate sentence. Id. In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted).

Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the district court] may not presume that the Guidelines range is reasonable. [The district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted). Those statutory factors include "the nature and circumstances of the offense and the

---

[3] "Generally, under the Sentencing Guidelines, a defendant who seeks to take advantage of a sentencing adjustment carries the burden of proof." United States v. Gambino, 106 F.3d 1105, 1110 (2d Cir. 1997).

history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed [] (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant[,]" 18 U.S.C. § 3553(a)(2).

IV.     A Sentence of 70 Months is Warranted

The government respectfully submits that a sentence of 70 months' imprisonment, which is within the applicable Guidelines range of 63 to 78 months' imprisonment, would be sufficient, but not greater than necessary, to achieve the goals of sentencing set forth at 18 U.S.C. § 3553(a).

The offense conduct was serious and dangerous. The defendant and his co-defendants systematically targeted commercial establishments across multiple neighborhoods in the Eastern District of New York with the explicit goal of stealing cash and smoking-related or marijuana products. The defendant willingly joined early in the conspiracy and helped commit the second armed robbery in the pattern on December 4, 2023. After his co-conspirator pointed a firearm at the innocent store employee in a threatening manner, the defendant positioned himself in front of the display counter as his co-conspirators stole cash and CBD products. As described above, and by the defendant himself, one of the reasons the defendant's co-conspirators wanted him involved was because he is a "physically imposing individual." Defendant's Sentencing Memorandum at 3.

Following this initial robbery, the defendant actively participated in two additional brazen armed robberies in a span of five days on January 20 and January 25, 2024. Notably, the January 20, 2024 robbery on 86th Street occurred in the middle of the day when store patrons were entering and exiting the store. And during the January 25, 2024 robbery, emboldened by the success of the prior robberies, the defendant stole merchandise himself and directed a victim to hand him and his co-conspirators additional items. A substantial sentence is necessary to reflect the nature and seriousness of the offense, to deter this defendant from committing future similar crimes and to promote respect for the law. See 18 U.S.C. §§ 3553(a)(2)(A) & (B).

A sentence of 70 months' imprisonment is also warranted given the history and characteristics of the defendant and the need to protect the community. See 18 U.S.C. §§ 3553(a)(1) & (a)(2)(C). Although the defendant has a limited criminal history, his one prior conviction was also for robbery. Clearly, the defendant was undeterred by the previous consequences of his criminal conduct given his involvement in the pattern of armed robberies in the instant case. During these robberies, the defendant and his co-conspirators used firearms to terrorize small businesses and vulnerable employees who were working their normal shifts. These individuals, who often work late into the night, are entitled to work in places where they need not fear for their lives or safety. The defendant's actions directly threatened these employees' sense of safety and their livelihoods. A meaningful sentence is necessary to protect the public from the defendant and to persuade the defendant to alter his conduct such that he no longer poses a danger to the public.

The defendant asks the Court to impose a sentence of time served, or alternatively, a sentence far below the Guidelines range. See Defendant's Sentencing Memorandum at 3. While the government acknowledges the challenges the defendant faced growing up, including the death of his father at a young age and the lack of structure provided by his mother, these are no excuses for his violent crimes against others. The defendant calls these robberies an "aberration" in his life, but as noted above, his prior conviction was also for committing a robbery. In addition, the defendant's statement that he participated in the robberies "along with neighborhood friends in the hope of obtaining a little money," Defendant's Sentencing Memorandum at 2, while perhaps accurate, is also only part of the story since the defendant also admitted during his post-arrest statements that he received marijuana from the robberies.

A term of imprisonment of 70 months is also necessary "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." See 18 U.S.C. § 3553(a)(6). Here, the Court sentenced the defendant's co-defendants Deshields and Townsend to 90 months' and 108 months' imprisonment, respectively. While these defendants had higher Criminal History Categories than the defendant, a review of available sentencing data nationally[4] for the past two years (2023 and 2024) shows that the average sentence for a robbery offense for a defendant with Criminal History Category I is 87 months and the median sentence is 72 months.[5] Notably, this data does not distinguish between offenses committed with or without a firearm. Thus, the defendant's argument for a sentence of time served, or alternatively, a sentence far below the Guidelines range, would vitiate the purpose of § 3553(a)(6).

Accordingly, for the reasons explained above, a sentence of 70 months' imprisonment would properly reflect the seriousness of the defendant's conduct, the need to protect the public, the desire for adequate deterrence, and the need to avoid unwarranted sentence disparities.

V.   Restitution and Forfeiture

The defendant's plea agreement with the government provides for restitution to be ordered in the amount of $25,550.00[6] and forfeiture in the amount of $3,000.00 for his plea to

---

[4] It is well established that the appropriate inquiry under § 3553(a)(6) considers "nationwide sentencing disparity among similarly situated defendants." United States v. Kanagbou, 726 F. App'x 21, 25 (2d Cir. 2018) (emphasis added).

[5] This data was obtained from the U.S. Sentencing Commission's Interactive Data Analyzer, which is available at https://ida.ussc.gov/analytics/saw.dll?Dashboard, with the following filters: Fiscal Years 2023 and 2024; Section 2B3.1 as the Primary Guideline section; and Criminal History Category I.

[6] The restitution is calculated as follows: $12,000.00 (Count Three) + $2,850.00 (Count Seven) + $10,700.00 (Count Eight) = $25,550.00. For Count Eight, although the total financial loss of store merchandise and iPhones from the January 25, 2024 robbery was $17,320.00, the NYPD recovered approximately $6,620.00 worth of merchandise. The

Count Three of the superseding indictment. The government respectfully requests that the Court order such restitution and forfeiture as part of the judgment in this case.

VI. Conclusion

For the foregoing reasons, the government respectfully submits that a sentence of 70 months' imprisonment would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

/s/ Daniel J. Marcus
Daniel J. Marcus
Assistant U.S. Attorney
(718) 254-6280

cc:   Clerk of the Court (RPK) (by ECF)
      Murray Singer, Esq. (by ECF)

---

government agrees that the defendant is responsible for this restitution amount jointly and severally with the co-defendants who participated in these three robberies: Adams, Bright, and Deshields (Count Three); Adams, Bright, and Townsend (Count Seven); and Adams, Bright, and Townsend (Count Eight).